# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA THERESA VELASQUEZ CHINGA,<br><br>  Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>  Respondents. | Case No.: 3:26-cv-00105-RBM-KSC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 1]** |

Pending before the Court are Petitioner Angela Theresa Velasquez-Chinga's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1) and Motion for a Temporary Restraining Order ("TRO Motion") (Doc. 2.). For the reasons set forth below, the Petition (Doc. 1) is **GRANTED**.

## I.   BACKGROUND

Petitioner, a native of Ecuador, entered the United States in 2016 with her month-old child seeking asylum. (Doc. 1 at 2.)[1] Petitioner presented herself at the border and was subsequently released on parole. (*Id*.) On November 6, 2016, the Department of Homeland Security ("DHS") issued Petitioner a "Notice of Release and Proof of Service"

---

[1] The Court cites the CM/ECF electronic pagination for filings unless otherwise noted.

on an I-830 Form. (Doc. 1-4 at 2–3.) The Notice of Release states that Petitioner was "[r]eleased from ICE custody" on the condition of "parole[ ] pursuant to 8 C.F.R. § 121.5" (*Id*. at 3.)

Petitioner's asylum application was later denied. (Doc. 1 at 2–3 (citing Doc. 1-2, First Declaration of Angela Theresa Velaquez-Chinga ["Velazquez-Chinga Decl."] ¶ 1).) The Board of Immigration Appeals and the Ninth Circuit denied her appeal in 2020 and in January 2022, respectively. (*Id*. at 3.) Petitioner remained on parole for nearly four years and "always checked in as ordered." (*Id*. (citing Velazquez-Chinga Decl. ¶¶ 2–3).)

On November 5, 2025, Petitioner was arrested while attending her regular check-in with ICE. (*Id*. (citing Velazquez-Chinga Decl. ¶ 3).) "No one told her why she was being arrested or gave her any paperwork explaining the revocation." (*Id*.) After her arrest, "ICE immediately took her to the U.S.-Mexico border." (*Id*. (citing Velazquez-Chinga Decl. ¶ 4).) Petitioner was denied entry into Mexico after she informed Mexican officials that she was not Mexican. (*Id*. (citing Velazquez-Chinga Decl. ¶ 4).) Petitioner alleges the ICE officers "were mad at [her]" and "told [her] to say that [she was] Mexican." (*Id*. (citing Velazquez-Chinga Decl. ¶ 4).) ICE then transferred her to the Otay Mesa Detention Center where she remains in detention. (*Id*.) Neither ICE nor her deportation officer have met with Petitioner about her deportation. (*Id*. (citing Velazquez-Chinga Decl. ¶ 5).)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id*. § 2241(c)(3).

### III. DISCUSSION

Petitioner claims she is being detained in violation of the Fifth Amendment's Due Process Clause, the Administrative Procedure Act ("APA"), 8 U.S.C. § 1231, and the Supreme Court's ruling in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 7–13.) Petitioner also claims ICE may not remove her to a third country without due process. (*Id.* at 13–17.)[2] Respondents argue the Court lacks jurisdiction over Petitioner's regulatory violation claims because "Congress has explicitly foreclosed district court jurisdiction over 'the decision or action by the Attorney General to commence proceedings and adjudicate cases.'" (Doc. 7 at 6 (quoting 8 U.S.C. § 1252(g)).) Respondents further argue that "[e]ven if the agency's compliance with the regulations had fallen short, Petitioner has not established prejudice nor a constitutional violation." (*Id.*)

#### A. Jurisdiction

As a preliminary matter, courts in this District have consistently rejected Respondents' argument that similarly situated petitioners' claims are jurisdictionally barred under 8 U.S.C. § 1252(g). *See Noori v. LaRose*, 2025 WL 2800149, at *7 (S.D. Cal. Oct. 1, 2025); *Araujo v. LaRose*, No. 25cv2942-BTM-MMP, 2025 WL 3278016, at *1 (S.D. Cal. Nov. 24, 2025) ("There will be jurisdiction if DHS failed to follow the law when revoking parole.").

In this case, Petitioner challenges the revocation of her parole as unlawful, not her removal or the execution of a removal order. Accordingly, the Court has jurisdiction to review the lawfulness of Respondents' discretionary decision to revoke Petitioner's parole. *See Noori*, 2025 WL 2800149, at *5–8.

#### B. Revocation of Parole

Petitioner claims that Respondents violated the Fifth Amendment's Due Process

---

[2] Based on Respondents' contention that Ecuador has accepted Petitioner for removal, Petitioner "acknowledges that her *Zadvydas* and third-country removal claims cannot succeed." (Doc. 8 at 1–2.) Counts 2 and 3 are **DISMISSED WITHOUT PREJUDICE**.

Clause and the APA by failing to comply with the applicable regulatory and statutory requirements to revoke her parole. (Doc. 1 at 7–9; Doc. 8 at 2–4.) Respondents contend that "no notice was required" to detain Petitioner because the purpose for which her parole was authorized for expired "once [her] removal order became final on March 15, 2022." (Doc. 7 at 6 (citing Doc. 7-1, Declaration of Gloria S. Solares ["Solares Decl."] ¶ 12).) Petitioner responds that her "parole document has no expiration date" and that the applicable regulation "talks about the expiration of 'time,' not purpose." (Doc. 8 at 4 (citing 8 C.F.R. § 212.5(e)(1)(ii)).) The Court agrees.

According to the Notice of Release, Petitioner was released in November 2016 on "parole[ ] pursuant to 8 C.F.R. § 212.5." (Doc. 1-4 at 3.) Under that regulation, parole may be granted "on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizens] present neither a security risk nor a risk of absconding." § 212.5(b); 8 U.S.C. § 1182(d)(5)(A). The governing statute allows for the revocation of parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). The noncitizen must then "return or be returned to the custody from which [s]he was paroled and thereafter [her] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id*. The Secretary has delegated its authority "to continue [a noncitizen] in custody or grant parole" to various officials. 8 C.F.R § 212.5(a) (listing the officials).

The relevant regulations provide for the automatic termination of parole "without written notice (i) upon the [noncitizen's] departure from the United States . . . , or, (ii) if not departed, at the expiration of the time for which parole was authorized . . ." § 212.5(e)(1)(i)–(ii). Otherwise, parole may be terminated with written notice to the noncitizen "upon accomplishment of the purpose for which parole was authorized" or when "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." § 212.5(e)(2)(i).

Although Respondents argue that Petitioner's parole "expired" when her removal

order became final, revocation based on the "accomplishment of the purpose for which parole was authorized" requires written notice under § 212.5(e)(2)(i). As Petitioner notes (*see* Doc. 8 at 4), there is no indication in the record before the Court that Petitioner's parole was authorized for any specific amount of *time*. Nor is there any indication that the Secretary or a designee determined the purposes of Petitioner's parole have been served. Because Petitioner continued to check-in with ICE pursuant to the conditions of her parole well after her removal order became final, such a determination cannot be inferred. Accordingly, Petitioner's parole was not automatically terminated under § 212.5(e)(1) and termination of her parole required written notice. As discussed *infra*, Respondents failed to provide such written notice.

C. **Due Process and the APA**

"[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under [8 C.F.R § 212.5], [her] 'liberty interest does not expire along with h[er] parole.'" *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (quoting *Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025)) (citing cases). "That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). "Due process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination." *Araujo*, 2025 WL 3278016, at *2 (citing *Noori*, 2025 WL 2800149, at *11 (analyzing factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).

Respondents do not dispute that Petitioner was not provided with an individualized determination (*see supra* Sec. III.B) or an opportunity to be heard before her parole was terminated. Respondents claim that Petitioner was served with an I-200, Warrant for Arrest of Alien, but do not provide the I-200 itself. (Doc. 7 at 3 (citing Solares Decl. ¶ 13).)

Indeed, Petitioner correctly states that the documents Respondents submitted say nothing about the revocation of Petitioner's parole. (*See* Doc. 8 at 2–3.) "[B]ecause Respondents detained Petitioner by revoking her parole in violation of the Due Process Clause, her detention is unlawful." *Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025); *accord Noori v. LaRose*, Case No. 25-cv-03006-BAS-MMP, 2025 WL 3295386, at *11 (S.D. Cal. Nov. 26, 2025) (granting habeas petition where summary revocation of parole violated the petitioner's due process rights). "The revocation of Petitioner's parole is thus neither consistent with 8 U.S.C. § 1182(d)(5)(A) nor the demands of due process." *Araujo*, 2025 WL 3278016, at *2. And "by denying Petitioner the required procedure before purporting to terminate [her] parole, Respondents acted arbitrarily and capriciously and violated the APA." *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025). The Court therefore finds that the revocation of Petitioner's parole and her subsequent detention violate the Due Process Clause of the Fifth Amendment and the APA.

## IV.   CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED IN PART AND DENIED IN PART**. Accordingly:

1. Count 1 is **GRANTED**. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of her pre-existing parole.
2. Respondents **MAY NOT** re-detain Petitioner without compliance with 8 C.F.R. § 212.5, 8 U.S.C. § 1182(d)(5)(A), and the Due Process Clause.
3. Counts 2 and 3 are **DENIED WITHOUT PREJUDICE**.
4. The TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: February 5, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE